IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WAYNE HARTUNG, | |
| Plaintiff, | Case No.: |
| VS. | |
| OCWEN LOAN SERVICING, LLC, and CENLAR AGENCY, INC., | JURY TRIAL REQUESTED |
| Defendants. | |

## COMPLAINT

COMES NOW the Plaintiff Wayne Hartung (hereafter the "Plaintiff") by counsel, and as Complaint against the above-named Defendants, avers as follows:

### PRELIMINARY STATEMENT

This action arises from the Defendants' mismanagement, wrongful actions and omissions regarding Plaintiff's mortgage loans on his properties.

Specifically, Defendants have failed to apply Plaintiff's mortgage payments and wrongfully instituted foreclosure proceedings. The failure to properly accept and apply payments has resulted in a stated unpaid balance which is false and inflated on the loans listed in this complaint. Also, Defendants failed to provide a response to the Plaintiff's "qualified written request" (QWR) and a "notice of servicing error" ("NOE") which requires a response to and reasonable investigation of the borrower's written notice of servicing error under federal law.

Plaintiff seeks actual and statutory damages, plus attorney's fees and costs, for multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"),

and the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"). Plaintiff also seeks damages for breach of the mortgage and note and various other common law claims.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331, 15.

2. U.S.C. 1692k, 12 U.S.C. § 2617 and 28 U.S.C. § 157(b).

3. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## PARTIES

4. Plaintiff is a natural person and resident of Mobile County, Alabama. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a corporation formed outside the State of Alabama, with its principal place of business in Florida.

6. Defendant Cenlar Agency, Inc. ("Cenlar") is a corporation formed outside the State of Alabama, with its principal place of business in New Jersey.

7. Ocwen and Cenlar send collection letters and places collection calls as a regular part of its business.

8. The mails and interstate wire communications are used to conduct the business of Ocwen and Cenlar.

9. Ocwen and Cenlar are also mortgage servicers as is defined by 12 U.S.C. § 2605(i)(2).

10. Ocwen and Cenlar are also debt collectors as defined by the FDCPA because on information and belief, they received an assignment of Plaintiff's debt, at which time the subject loans were in default or considered to be in default.

## FACTUAL ALLEGATIONS

*Ocwen Loan Servicing*

11. Plaintiff owns several homes and Ocwen is currently the loan servicer. The properties are located at 4725 Emerald Dr. E., 2710 Tifton Ct, in Mobile, Alabama and 2081 Mesa Dr. in Semmes, Alabama and the below facts relate to these properties.

12. The servicing of the loans have been transferred numerous times over the years.

13. Since the last transfer, Ocwen has repeatedly delayed implementation of payments, failed to apply payments to the loans, calculated escrow accounts incorrectly and has even misapplied payments from one mortgage account to another account without correcting the errors.

14. Ocwen also informed Plaintiff on more than one occasion that several payments made by check were not received by Ocwen. However, at a later date, Plaintiff received the lost checks from Ocwen by mail correspondence.

15. Another example of Ocwen's inadequate servicing was on the Plaintiff's 2710 Tifton Ct. home. At one point, Ocwen had three (3) separate insurance policies on this one property. Plaintiff spent over two (2) years dealing with this matter, with charges and fees assessed on the loan account that were unnecessary. This caused an increase in the mortgage payments that still has not been resolved by Ocwen.

16. Plaintiff has disputed the errors on the mortgage accounts numerous times since 2014. However, each time Plaintiff disputed, Ocwen failed to update or correct the loan files.

17. In fact, throughout 2015 and 2016, Plaintiff contacted Ocwen by phone dozens of times on each of the mortgage accounts.

18. After sending in his timely monthly mortgage payments, Plaintiff continued to receive letters and phone calls from Ocwen that the loan payments were past due on several of the

accounts. The letters informed Plaintiff that there was a foreclosure proceeding in progress on one of his accounts and no further payments would be accepted unless it was for the full amount of the loan.

19. This harassment continued with each of Plaintiff's loans throughout 2015 and into 2016.

20. Once again, confused by the inflated amount reporting on the statements and concerned that several of his homes would be foreclosed upon, on May 27, 2016, Plaintiff mailed letters that constituted as a "qualified written request" (QWR) and a "notice of servicing error" ("NOE") pursuant to the RESPA, 12 U.S.C. § 2605(e), and its implementing regulations.

21. Plaintiff received QWR responses from Ocwen related to these accounts which provided a loan history. No further information was provided.

22. Plaintiff continued making his monthly mortgage payments on these loans as required under the terms of his agreements.

23. Based on the responses, Ocwen refused to make corrections to the account which it would have deemed necessary had a reasonable investigation been conducted. Plaintiff has suffered damages as a direct and proximate result of these failures.

24. Ocwen further failed to timely respond to the Qualified Written Request.

25. Ocwen has engaged in a pattern and practice of refusing or failing to adequately respond to QWR/NOE's submitted by borrowers with respect to the loans it services.

26. On information and belief, Ocwen negligently, wantonly, and/or willfully failed to take action to use the payments of the Plaintiff to satisfy monthly mortgage payments as they came due pursuant to the loan agreement and instead improperly charged Plaintiff fees such as "property inspection", "late fees", "attorney fees" and other various charges to the account.

27. Ocwen negligently, wantonly, fraudulently, and in violation of the fiduciary duties owed by Ocwen to Plaintiff, failed to properly communicate with Plaintiff regarding his loans to the detriment of Plaintiff.

28. Ocwen's actions have caused Plaintiff mental anguish and emotional distress.

29. Ocwen's actions have caused damage to the Plaintiff's good name and credit ratings.

30. Ocwen's actions have also caused Plaintiff to incur expenses for court costs and litigation.

*Cenlar Agency*

31. Plaintiff has a home with Cenlar acting as the servicer of the loan. The property is located at 4864 Emerald Dr. E. in Mobile, Alabama and the following facts relate to this property.

32. As similar with Ocwen, Plaintiff has disputed with Cenlar regarding the mortgage account and application of payments and insurance.

33. Cenlar and the Plaintiff entered into a permanent modification agreement on this property several years ago, and the Plaintiff has made his payments under the agreement.

34. Over the past several years, Cenlar continued to maintain the account past due, appearing to reflect the loan conditions prior to the modification.

35. This caused the loan to accrue late fees and other fees that the Plaintiff did not owe, resulting in thousands of dollars.

36. After many attempts over the phone to resolve this matter with the inflated amount reporting on the statements, and concerned that his home would be foreclosed upon, on May 27, 2016, Plaintiff mailed a "qualified written request" (QWR) and a "notice of servicing error" ("NOE") pursuant to the RESPA, 12 U.S.C. § 2605(e), and its implementing regulations.

37. Plaintiff received QWR responses from Cenlar related to the account which provided a loan history. No further information was provided.

38. Plaintiff continued making his monthly mortgage payments on the loan as required under the terms of his agreement.

39. Based on the responses, Cenlar refused to make corrections to the account which it would have deemed necessary had a reasonable investigation been conducted. Plaintiff has suffered damages as a direct and proximate result of these failures.

40. Cenlar further failed to timely respond to the Qualified Written Request.

41. Cenlar has engaged in a pattern and practice of refusing or failing to adequately respond to QWR/NOE's submitted by borrowers with respect to the loans it services.

42. On information and belief, Cenlar's negligently, wantonly, and/or willfully failed to take action to use the payments of the Plaintiff to satisfy monthly mortgage payments as they came due pursuant to the loan agreement and instead improperly charged Plaintiff fees such as "property inspection", "late fees", "attorney fees" and other various charges to the account.

43. Cenlar negligently, wantonly, fraudulently, and in violation of the fiduciary duties owed by Ocwen to Plaintiff, failed to properly communicate with Plaintiff regarding his loan to the detriment of Plaintiff.

44. Cenlar's actions have caused Plaintiff mental anguish and emotional distress.

45. Cenlar's actions have caused damage to the Plaintiff's good name and credit ratings.

46. Cenlar's actions have also caused Plaintiff to incur expenses for court costs and litigation.

## COUNT I
## (VIOLATIONS OF RESPA)

47. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

48. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA."), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of his loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

49. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

50. RESPA requires specific actions be taken by the servicer upon receipt of an NOE, including the conducting of a reasonable investigation of the error. The servicer is also required to make all "appropriate corrections" to the account.

51. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

52. Defendants are a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

53. Plaintiff's May 27, 2016 letters constitute as "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e). Defendants were required to reasonably investigate the errors identified in the letter, make all appropriate corrections and provide the information and documents requested.

54. Defendants failed to correct the errors identified in the letters and on information and belief continued to report derogatory information to the credit bureaus in further violation of 12 U.S.C. § 2605(e).

55. Plaintiff has suffered actual damages as a proximate result of Defendants' failure to comply with Section 2605(e), including mental anguish and emotional distress. Plaintiff's actual damages also include fees, interest and other charges incurred as a result of Defendants' false belief that Plaintiff is in default; loss of equity as a result of Defendants' failure to properly apply payments; and costs incurred in sending the NOE which, because of Defendants' failure to correct its servicing error, were for naught.

56. Defendants have engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to the Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants for each violation of RESPA, awarding the following relief:

   a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

   b. Reasonable attorney's fees, and costs expended in this proceeding; and

   c. Such other and further relief as the Court may deem just and proper.

## COUNT II
### (BREACH OF THE MORTGAGE AGREEMENTS)

57. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

58. The acts and omissions made by Defendants in connection with management of Plaintiff's mortgages constitute a breach of the mortgage and note.

59. Plaintiff has suffered damage as a proximate result of the Defendants' breach.

60. The mortgages provide a right to cure any default and reinstate the loan prior to acceleration and again within five days prior to any foreclosure sale. The misinformation and conflicting information given by Defendants regarding the status of the loan and has deprived the Plaintiff of any meaningful opportunity to cure and reinstate.

61. The representations made to Plaintiff by Defendants are part of a pattern and practice of deception and misinformation directed to borrowers who were in foreclosure proceedings and designed to lull them into a false belief that the foreclosure will be avoided through a permanent modification prior to the foreclosure sale and will have the opportunity, prior to the sale, to avoid foreclosure either through reinstatement or exercise of other rights available under law.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants for breach of the mortgages and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
**(INVASION OF PRIVACY AND WANTON COLLECTIONS)**

62. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

63. Alabama law imposes upon any creditor and any collector the duty not to take actions to collect a debt which exceed the bounds of reasonableness and/or which wrongfully intrude upon the privacy of the debtor.

64. The actions taken by the Defendants in falsely holding Plaintiff in default, threatening imminent loss of his homes, subjecting Plaintiff to repeated and harassing collection calls about its false claims that he was behind on his mortgage all constitute an wrongful invasion

of Plaintiff's privacy and exceeded the bounds of reasonableness.  Those acts also constitute the wanton collection of alleged debt conducted with a wanton or reckless regard for the Plaintiff's welfare.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants for invasion of privacy and/or wanton collections and award him compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (FDCPA VIOLATIONS)

65. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

66. This count is asserted against Defendants for violations of the FDCPA.

67. Defendants are a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

68. Defendants have violated the FDCPA in connection with its attempts to collect the account against Plaintiff.  Defendants' violations include, but are not limited to the following:

   a. Failing to make the disclosures required by 15 U.S.C. § 1692g;

   b. Instituting foreclosure proceedings without valid legal authority to do so.  This is a violation of 15 U.S.C. § 1692f(6); and

   c. Providing false information regarding the status of Plaintiff's loan.  This is violation of 15 U.S.C. § 1692c.

69. As a result of its violations of the FDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against

Defendants for the following:

a. Actual and statutory damages pursuant to 15 U.S.C. 1692k;

b. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

c. Such other and further relief as this Court deems just and proper, the premises considered.

RESPECTFULLY submitted on this the 12th day of July, 2017.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN.**

JAMES D. PATTERSON (PATTJ6485)
UNDERWOOD & RIEMER, P.C.
Attorney for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
Telephone: (251) 432-9212
E-mail: jpatterson@alalaw.com

**DEFENDANT IS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Ocwen Loan Servicing, LLC
c/o CSC Lawyers Incorporating Svr Inc
150 South Perry Street
Montgomery, Alabama 36104

Cenlar Agency, Inc.
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104